IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KELLY D. PORCH and MICHELLE R. PORCH, <br><br> Plaintiffs, <br><br> vs. <br><br> PREFERRED CONTRACTORS INSURANCE COMPANY, RRG; GOLDEN STATE CLAIMS ADJUSTERS INC.; SAFEBUILT INSURANCE SERVICES, INC. d/b/a SIS WHOLESALE INSURANCE SERVICES, <br><br> Defendants. | CV 18-102-BLG-TJC <br><br> **ORDER** |

Plaintiffs Kelly D. Porch and Michelle R. Porch filed this action against Defendants Preferred Contractors Insurance Company ("PCIC"), RGG, Golden State Claims Adjusters Inc. ("Golden State"), and Safebuilt Insurance Services, Inc. doing business as SIS Wholesale Insurance Services ("SIS"), arising out of PCIC and Golden States' failure to defend an underlying lawsuit the Porch's brought against Ochoa's Construction, Inc. ("Ochoa's"). (Doc. 29.) Plaintiffs assert claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Montana's Unfair Trade Practices Act ("UTPA"), common law bad faith, breach of fiduciary duty, negligence, and punitive damages. (*Id.*)

1

Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment. (Doc. 13.) Defendants have filed an opposition, and Plaintiffs have replied. (Docs. 26, 34.) The motion is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court finds Plaintiffs' Motion for Partial Summary Judgment should be **DENIED**.

I.  **FACTUAL BACKGROUND**[1]

In May 2014, Roofing & Restoration Services of America, LLC ("RRSA") and Rambur Construction, Inc. ("Rambur") entered into a Joint Marketing Agreement, pursuant to which RSSA and Rambur acted together to solicit sales of roofing jobs in the Billings, Montana area following a significant hail storm. (Doc. 29 at ¶ 10.)

In June 2014, RRSA contracted with Plaintiff Kelly Porch to sell roofing contracts on several residential buildings in Billings. (Docs. 27 at ¶ 4; 29 at ¶ 9.) RRSA chose to treat Mr. Porch as a direct seller as defined by 26 U.S.C. § 3508, and did not elect Workers' Compensation coverage for him. (Doc. 27 at ¶¶ 4-5.)

RRSA and Rambur hired Ochoa's Construction, Inc. ("Ochoa's") to tear off and reapply materials to a residential roof in Billings. (*Id.* at ¶ 3.) On July 10,

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motion for partial summary judgment and are taken from the parties' submissions and are undisputed unless otherwise indicated.

2

2014, Mr. Porch arrived at the Ochoa's job site with a project manager from RSSA. (Doc. 29 at ¶ 12.) While at the job site, Mr. Porch and the project manager went up onto the roof to physically show Ochoa's foreman how they wanted the materials applied. (*Id.*) Mr. Porch used a ladder provided by Ochoa's to get onto the roof. (*Id.* at ¶ 13.) While Mr. Porch was on the roof, one of the employees from Ochoa's moved the ladder and placed it against the rain gutter of the house. (*Id.*; Doc. 27 at ¶ 2.) When Mr. Porch was climbing down the ladder, the rain gutter broke, causing the ladder and Mr. Porch to fall approximately 10-15 feet.[2] (Docs. 27 at ¶ 6; 29 at ¶ 13.) Mr. Porch was knocked unconscious and severely injured. (*Id.*) Mr. Porch alleges he injured his right foot, both kidneys, his lungs, nose, back, right elbow, and right leg. (Doc. 29 at ¶ 11.)

At the time of Mr. Porch's accident, PCIC insured Ochoa's under a Commercial General Liability Policy, policy number PC95125, effective June 6, 2014 to June 6, 2015 (the "Policy"). (Doc. 27 at ¶ 7.)

Plaintiffs filed a Complaint and Demand for Jury Trial ("Complaint") on November 24, 2014, in the Montana Thirteenth Judicial District Court, Yellowstone County against Ochoa's and RRSA (the "underlying Complaint").

---

[2] Defendants dispute the wording Plaintiffs use to describe the fall in their Statement of Undisputed Facts, but Defendants do not dispute the factual allegations as stated in the Complaint. Therefore, the Court finds Plaintiffs' description of the fall as set forth in the Complaint is undisputed.

3

(Doc. 27-1.) The underlying Complaint alleged Mr. Kelly sustained damages "from a fall resulting from a negligently placed ladder on the job site." (*Id.* at ¶ 4.) Neither PCIC, Golden State, nor SIS were named as defendants.

On April 23, 2015, PCIC was notified of the underlying Complaint. (Doc. 27 at ¶ 8.) Golden State responded on behalf of PCIC, and informed Ochoa's by letter dated May 21, 2015, that no coverage existed for the allegations in Plaintiffs' Complaint, and that PCIC would be denying coverage for defense and indemnity. (Docs. 16-5 at 11-16; 27 at ¶ 10.)

On February 24, 2016, Ochoa's entered into a stipulated consent judgment and covenant not to execute, and assigned to Plaintiffs all of its rights against Defendants. (Docs. 16-5 at 1-10; 27 at ¶ 13.) Plaintiffs thereafter dismissed all defendants except Ochoa's. (Doc 27 at ¶ 14, n.2.)

On March 28, 2017, Judge Ingrid Gustafson of the Montana Thirteenth Judicial District Court held a reasonableness hearing with respect to Plaintiffs and Ochoa's stipulated consent judgment. (*Id.* at ¶ 14.) Plaintiffs were present at the hearing and presented evidence in support of the reasonableness of the judgment; Ochoa's did not appear. (Docs. 16-6; 27 at ¶ 23.) On March 30, 2017, Judge Gustafson entered judgment in the amount of $4,700,000.00 in favor of Plaintiffs

and against Ochoa's.[3] (*Id.*)

Plaintiffs now move for partial summary judgment. Plaintiffs ask the Court to find Defendants breached their duty to defend Ochoa's, and are therefore liable for the Judgment entered by Judge Gustafson. Plaintiffs argue their claim against Ochoa's fell within the insurance Policy's coverage, and that Defendants cannot unequivocally demonstrate that there was no coverage under the Policy. Defendants counter that Plaintiffs' claims are clearly and explicitly excluded from coverage under the plain terms of the Policy, and thus, they had no duty to defend.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted when the evidence presented is so conclusive that one party must prevail. *Anderson v.*

---

[3] Subsequently, Plaintiffs were granted leave to file a Second Amended Complaint, which added PCIC and Golden State as defendants, and asserted various claims against them based on their coverage decisions with respect to Ochoa's. (Doc. 27-3.) Defendants then removed the case to this Court and sought dismissal on grounds that Judge Gustafson erred in permitting Plaintiffs to amend their complaint after judgment had been entered in the state court. (*Porch v. Ochoa's Const. Inc., et al.*, Case No. CV-17-93-BLG-SPW-TJC, Docket No. 80 (D. Mont.).) Ultimately, the action was dismissed on procedural grounds with leave to amend, and Plaintiffs filed the instant case.

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

    B.    **Application of Montana Law**

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015).

It is well-settled in Montana that an insurer's "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (*citing Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). In comparing allegations of liability with policy language "to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the

6

allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385. The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed. *Id*. Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id*. The insurer, however, "has no obligation to look beyond the complaint in determining whether a claim is covered by a policy." *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 358-59 (Mont. 2013).

The duty to defend arises from the language of the policy. Without coverage under the policy terms, no duty exists. *RQR Development, LLC v. Atlantic Cas. Ins. Co.*, 2014 WL 6997935, *2 (D. Mont. 2014) (citing *Grimsrud v. Hagel*, 119 P.3d 47, 53 (Mont. 2005). If there is "an unequivocal demonstration that the claim against the insured does not fall within the insurance policy's coverage," the insurer's duty to defend does not arise. *Staples*, 90 P.3d at 385. On the other hand, if an insurer unjustifiably refuses to defend, the insurer is estopped from denying coverage, and becomes liable for defense costs and judgments. *Tidyman's*, 330 P.3d at 1149. The Montana Supreme Court has "repeatedly admonished insurers" facing a coverage question that if they believe a policy exclusion applies, the prudent process to follow is to "defend the insured and file a declaratory judgment

7

action to discern coverage." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 415 (Mont. 2013).

In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)). The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont. 2003). Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).

"An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007). But a court should not "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005).

8

Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

## III. DISCUSSION

The Policy provided the following coverage:

**1.     Insuring Agreement**

    a.     We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies. However, we will have no duty to defend any insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. 16-3 at 6.)

Defendants do not dispute that Plaintiffs' claims in the underlying complaint fall within the scope of this general coverage provision. Defendants argue however, that the claims are clearly excluded from coverage under three separate exclusions contained in the Policy. Specifically, Defendants contend the Employer's Liability, Independent Contractors/Subcontractors, and Fall from Heights exclusions unequivocally defeat coverage. The Court finds Defendants correctly concluded that there is no coverage under the Fall from Heights exclusion.

9

To determine if the duty to defend is triggered, the Court compares the allegations of liability advanced in a complaint with the policy language. *Staples*, 90 P.3d at 385; *Landa v. Assurance Co. of Am.*, 307 P.3d 284, 288 (Mont. 2013) ("[T]o determine whether [the insurer] had a duty to defend [the insured], we will look first to the terms of the policy, and next to the facts alleged [in the] complaint"); *Grindheim v. Safeco Ins. Co. of Am.*, 908 F.Supp. 794, 798-99 (D. Mont. 1995). "[I]t is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language." *Town of Geraldine v. Montana Mun. Ins. Auth.*, 198 P.3d 796, 800 (Mont. 2008).

In the underlying Complaint, Plaintiffs alleged in relevant part:

4. . . . Plaintiff Kelly Porch injured his right foot, both kidneys, his lungs, his nose, his back, and fractured his right elbow and right leg from a fall resulting from a negligently placed ladder on the job site.

6. . . . While Plaintiff Kelly Porch was climbing down the ladder, the rain gutter broke causing the ladder and Plaintiff Kelly Porch to fall approximately 10-15 feet knocking Plaintiff Kelly Porch unconscious and causing injury to Plaintiff Kelly Porch.

(Doc. 27-1 at ¶¶ 4, 6.)

The Policy provides:

**2. Exclusions**

This insurance does not apply to:

ah. **Fall from Heights**

> "Bodily injury" sustained by any person at the location of the incident, whether working or not, arising out of, resulting from, caused by, contributed to by, or in any way related to, in whole or in part, from a fall from heights. For purposes of this exclusion, a fall from heights shall include, but not be limited to, a fall from scaffolding, hoists, stays, ladders, slings, hangers, blocks, or any temporary or moveable platform where there is a height differential to the ground.

(Doc. 16-3 at 15.)

The underlying Complaint alleged that Mr. Porch suffered bodily injury when he fell approximately 10-15 feet while descending a ladder. The Fall from Heights exclusion states that bodily injury caused by or in "any way related to" a fall from heights is excluded. Even when liberally construing the allegations in the underlying Complaint, and resolving all doubts in favor of a finding that the obligation to defend was triggered, it is clear Mr. Porch's injuries were excluded by this provision.

Focusing on the second sentence of the Fall from Heights exclusion, Plaintiffs argue Mr. Porch did not fall *from* the ladder, but rather fell *with* the ladder, and thus, the exclusion did not unequivocally apply. The Court need not, however, even reach the second sentence of the exclusion. Under the plain language of the first sentence, Mr. Porch's injuries were clearly excluded. Regardless of whether Mr. Porch rode the ladder to the ground or was separated from the ladder during the fall, the underlying Complaint alleged Mr. Porch's injuries resulted from a fall from a height of 10-15 feet. As such, the allegations in

the underlying Complaint unequivocally demonstrated Mr. Porch's claim was excluded because his injuries "ar[ose] out of, result[ed] from, [were] caused by, contributed to by, or [were] in any way related to, in whole or in part, from a fall from heights." (Doc. 16-3 at 15.)

Even considering the second sentence, however, the Court does not find there is any ambiguity in the contract language. First, Plaintiffs' argument that Mr. Porch sustained an injury in a fall with a ladder, rather than in a fall from a ladder, presents a distinction without any discernable difference. To interpret the exclusion as excluding coverage for a fall where the injured party loses contact with the ladder, but providing coverage if the injured party is able hang on to the ladder throughout the fall, would plainly distort the contractual language to create an ambiguity where none exists.

Moreover, the second sentence states that a fall from heights "shall include, but not be limited to" falls from various objects. The words "include, but not limited to" are terms of enlargement, not of limitation. *Burgess v. United States*, 553 U.S. 124, 131, n.3 (2008). Therefore, the second sentence does not limit the meaning of "fall from heights" to only those falls that are specifically described. Thus, a fall *with* a ladder is excluded, just as a fall *from* a ladder, as long as the fall is "from heights."

12

In *Navarro v. Golden State Claims Adjusters*, 2018 WL 4471782 (N.D. Tex. Aug. 27, 2018), the court reached a similar conclusion. There, the court addressed the exact same Fall from Heights exclusion in a PCIC insurance policy that is at issue here. *Id.* at *3. In *Navarro*, the plaintiff alleged he suffered severe bodily injuries as a result of falling through an attic floor to the ground approximately 18 feet below. *Id.* PCIC argued its duty to defend was not triggered because the plaintiff's allegations fell within the Fall from Heights exclusion. *Id.* at *7. The Plaintiff countered the exclusion did not prevent coverage because the second sentence of the exclusion limited the meaning of "fall from heights" to only falls from the objects that were specifically listed. *Id.* at *9. The court rejected the plaintiff's reading of the policy. *Id.* at *10-11. The court held "there is no indication that the second sentence limits the plain meaning of 'fall from heights.' The second sentence does not purport to change the generally accepted definition of 'fall from heights' or specify from where or how a person must fall to come within the exclusion." *Id.* at *10. The court concluded the exclusion as written could be given a clear and definite legal meaning, and was therefore unambiguous. *Id.* The court therefore determined PCIC did not have a duty to defend. *Id.* at *11.

The Court finds *Navarro* persuasive. Accordingly, reading the Policy as a whole, and giving its terms their plain meaning, the Fall from Heights exclusion unambiguously applies to more than just falls *from* the listed objects.

13

Plaintiffs also argue the phrase "from heights" is ambiguous. Plaintiffs assert it is uncertain whether a 10-15 foot vertical distance is high enough to qualify as being "from heights." The exclusion, however, provides that there only has to be "a height differential to the ground." Plaintiffs again strain to create ambiguity by focusing on the phrase "*a* height differential." Plaintiffs imply "a" is ambiguous, and assert Defendants could have used the word "any" to avoid confusion. The Court does not find the use of the word "a" is unclear, and again declines to create an ambiguity where one does not exist. Here, the underlying Complaint alleged Mr. Porch fell 10-15 feet. (Doc. 27-1 at ¶ 6.) As such, the underlying Complaint alleged there was *a* height differential. Further, it is irrelevant whether the 10-15 feet was measured from the top of Mr. Porch's head or the bottom of his feet, because if there is a height differential to the ground, the exclusion is triggered. Accordingly, it is clear that the allegations in the underlying Complaint fell within the Fall from Heights exclusion.

The Court finds Defendants were justified in relying on the Fall from Heights exclusion. Defendants have unequivocally demonstrated Plaintiffs' claims in the underlying complaint did not fall within the insurance Policy's coverage, and therefore, they had no duty to defend Ochoa's as a matter of law.[4]

---

[4] Because the Court finds Defendants' reliance on the Fall From Heights exclusion is dispositive, the Court need not reach whether Defendants could show the other exclusions unequivocally applied.

Further, because the Policy expressly provides that "[t]his insurance does not apply" if an exclusion is applicable, the Policy provides no coverage to Plaintiffs with regard to the issues raised in this litigation. Thus, it is unclear whether any avenue remains for Plaintiffs to recover against Defendants. It also appears the pending Motions to Dismiss (Docs. 35, 37) may be moot. Because Defendants did not cross move for partial summary judgment, however, it is unclear how the case should proceed. Accordingly, the Court will hold status conference to discuss further proceedings in this case.

## IV. CONCLUSION

Based on the forgoing, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Partial Summary Judgment (Doc.13) is **DENIED**.

2. The Court will conduct a telephonic status conference on **March 26, 2019 at 11:00 a.m.** to discuss further proceedings in this case. Counsel shall use the Court's conferencing system to participate in the Conference:

    1. Dial 1-877-848-7030
    2. Enter Access Code 5492555 #

**IT IS ORDERED.**

DATED this 11th day of March, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge